**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EMBLEMHEALTH, INC., individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ALEXION PHARMACEUTICALS, INC. and ALEXION PHARMA INTERNATIONAL OPERATIONS LTD.,<br><br>*Defendants*. | Civil Action No. 1:25-cv-10985-BEM |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 3

A. Patent Infringement Litigation Against Samsung ..... 3

B. The Motion to Dismiss Decision ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. EMBLEM LACKS ANTITRUST STANDING TO PURSUE A SHAM LITIGATION CLAIM PREDICATED ON A FRAUD-ON-THE-PTO THEORY. ..... 7

II. ALEXION'S SETTLEMENT OF THE SAMSUNG CASE DEMONSTRATES THE CASE WAS SUCCESSFUL AS A MATTER OF LAW. ..... 11

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988)....12

*Aponte-Torres v. Univ. of P.R.*,
445 F.3d 50 (1st Cir. 2006)....6, 7

*Asahi Glass Co. v. Pentech Pharms., Inc.*,
289 F. Supp. 2d 986 (N.D. Ill. 2003)....14

*Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991)....12

*Curran v. Cousins*,
509 F.3d 36 (1st Cir. 2007)....6, 7

*In re Elysium Health-Chromadex Litig.*,
354 F. Supp. 3d 330 (S.D.N.Y. 2019)....12, 13, 14

*FTC v. Actavis*,
570 U.S. 136 (2013)....15

*Iron Workers Dist. Council of New Eng. Health & Welfare Fund v. Teva Pharm. Indus. Ltd.*,
757 F. Supp. 3d 91 (D. Mass. 2024)....6, 7

*In re K-Dur Antitrust Litig.*,
2007 WL 5297755 (D.N.J. Mar. 1, 2007)....10

*Kando v. R.I. State Bd. of Elections*,
880 F.3d 53 (1st Cir. 2018)....6, 7

*La. Health Serv. & Indem. Co. v. Celgene Corp.*,
2025 WL 1056668 (S.D.N.Y. Apr. 8, 2025)....9, 14

*In re Lantus Direct Purchaser Antitrust Litig.*,
2018 WL 6629708 (D. Mass. Oct. 24, 2018)....7, 13

*In re Loestrin 24 Fe Antitrust Litig.*,
814 F.3d 538 (1st Cir. 2016)....15

*Mass. Laborers' Health & Welfare Fund v. Boehringer Ingelheim Pharms., Inc.*,
783 F. Supp. 3d 417 (D. Mass. 2025)....13

*Morales-Cruz v. Univ. of P.R.*,
676 F.3d 220 (1st Cir. 2012) ........ 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ........ 12

*P.R. Tel. Co., Inc. v. San Juan Cable Co. LLC*,
196 F. Supp. 3d 248 (D.P.R. 2016) ........ 13

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) ........ 2, 7, 11, 12

*Quiñones v. Méndez*,
2012 WL 1657137 (D.P.R. May 10, 2012) ........ 6

*Santander Consumer USA, Inc. v. Walsh*,
762 F. Supp. 2d 217 (D. Mass. 2010) ........ 6

*SAS of P.R., Inc. v. P.R. Tel. Co.*,
48 F.3d 39 (1st Cir. 1995) ........ 10

*In re Terazosin Hydrochloride Antitrust Litig.*,
335 F. Supp. 2d 1336 (S.D. Fla. 2004) ........ 13

*Toyo Tire & Rubber Co. v. Atturo Tire Corp.*,
2017 WL 1178224 (N.D. Ill. Mar. 30, 2017) ........ 13

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharm. Corp.*,
902 F.3d 1 (1st Cir. 2018) ........ 7, 9, 11

*Vázquez-Ramos v. Triple-S Salud, Inc.*,
55 F.4th 286 (1st Cir. 2022) ........ 9

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
868 F.3d 132 (3d Cir. 2017) ........ 12

**Rules**

Fed. R. Civ. P. 12(c) ........ 6, 7

Fed. R. Civ. P. 12(b)(6) ........ 6

Defendants Alexion Pharmaceuticals, Inc. and Alexion Pharma International Operations Ltd. (collectively, "Alexion") submit this Memorandum of Law in Support of their Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

**INTRODUCTION**

Judgment should be entered for Alexion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure because Plaintiff EmblemHealth Inc. ("Emblem") lacks standing to assert its remaining sham litigation claim and that claim is immune from challenge under the antitrust laws. In its Order on Defendants' Motion to Dismiss, this Court dismissed Emblem's antitrust claims premised on a *Walker Process* theory, finding that Emblem lacked standing to pursue such a theory, but allowed its sham litigation claims as to the Samsung patent litigation to proceed in light of the fact that the full terms of the settlement agreement were not in the record on the motion to dismiss. ECF No. 49 (Mem. & Order on Defs.' Mot. to Dismiss) ("MTD Op.") at 16–18, 21–22, 24. In particular, the Court stated that the fact that "the Samsung suit settled on terms favorable to Alexion provides strong evidence that the patent litigation was not objectively baseless" although "the complete terms of the settlement are not in the record . . . so the Court is skeptical as to whether it can draw any conclusions as to the favorability of the settlement." *Id.* at 21 & n.23.

Now that the pleadings have closed, Alexion moves for judgment on the pleadings. As an initial matter, Emblem lacks antitrust standing to pursue a sham litigation theory that depends on the same alleged fraud on the U.S. Patent and Trademark Office ("PTO") that this Court has already held Emblem lacks standing to challenge. It is now clear that Emblem's sham litigation theory in this case is entirely coextensive with its previously dismissed *Walker Process* theory. The date for Emblem to seek to further amend its complaint to attempt to plead some different

theory of sham litigation has passed under the scheduling order, making this issue ripe for adjudication.[1]

Furthermore, Emblem's sham litigation claim is barred as a matter of law. Alexion provides herein the settlement with Samsung, which confirms that the litigation with Samsung was a successful enforcement of Alexion's patent rights and therefore not a sham as a matter of law. As described in Alexion's Motion to Dismiss, a successful lawsuit by definition cannot be a sham, *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.* ("*PRE*"), 508 U.S. 49, 58 (1993), and courts have repeatedly held that patent litigation that is resolved through a settlement that effectively enforces patent rights is a successful lawsuit, *see* ECF No. 28 (Defs.' Mem. of L. in Supp. of Mot. to Dismiss Am. Compl.) at 10–12 (collecting cases). Here, Samsung asserted that it could launch its Soliris biosimilar as early as January 2024. In response, Alexion enforced its patent rights and achieved the objectives of the litigation through a settlement that precluded Samsung from launching its Soliris biosimilar before March 2025. In other words, the settlement achieved the objectives of the lawsuit by enforcing Alexion's patent rights to prevent an earlier launch by Samsung. This precludes the sham litigation claim as a matter of law. Further, with the settlement agreement now before the Court, it is demonstrable that the agreement includes no "reverse payment" terms that could even conceivably undermine the bona fides of the settlement as a successful enforcement of Alexion's patent rights.

Thus, Emblem's only remaining claim in this case—its sham litigation claim as to the Samsung litigation—is barred as a matter of law under *Noerr-Pennington* in light of Alexion's successful assertion of its patent rights culminating in the settlement with Samsung—a document

[1] The deadline for Emblem to move to amend its complaint under this Court's Scheduling Order was June 1, 2026. ECF No. 54.

that is incorporated by reference in the Amended Complaint and is an indisputably authentic document that can be considered on this Rule 12(c) motion. Accordingly, the Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

### A. Patent Infringement Litigation Against Samsung

Emblem's allegations center on Alexion's "enforcement" of five patents that Alexion obtained in 2017 and 2020 covering Soliris.[2] The 2017 and 2020 Patents expire between March 15 and September 8, 2027. ECF No. 22 (Am. Compl.) ¶ 170. In June 2023, biosimilar manufacturer Samsung filed five inter partes review ("IPR") petitions before the United States Patent Trial and Appeal Board ("PTAB"), wherein Samsung petitioned the PTAB for rulings that the claims of Alexion's 2017 Patents and 2020 Patents were unpatentable. *Id.* ¶¶ 257–263. The PTAB instituted review on each of the five IPRs. *Id.* ¶¶ 258–262.

In July 2023, the FDA accepted an application from Samsung to market a biosimilar version of Soliris. *Id.* ¶ 264. Pursuant to the Biologics Price Competition and Innovation Act ("BPCIA") notification requirements, Samsung notified Alexion that it intended to launch its Soliris biosimilar after the 180-day waiting period. *Id.* ¶ 265; ECF No. 66 (Answer) ¶ 265. The BPCIA provides a pathway for companies to enter the market with biologic drugs that the FDA concludes are "biosimilar" to innovator biologic drugs. Am. Compl. ¶¶ 30–32. Under the BPCIA, a patent holder may bring a patent infringement suit prior to the launch of a biosimilar product. *Id.* ¶ 62. The biosimilar manufacturer must give the patent holder 180 days' notice before marketing, but upon expiration of the notice period can launch its biosimilar regardless of the status

[2] U.S. Patent No. 9,718,880 (the "'880 patent"), U.S. Patent No. 9,725,504 (the "'504 patent"), and U.S. Patent No. 9,732,149 (the "'149 patent") (collectively, the "2017 Patents"); U.S. Patent No. 10,590,189 (the "'189 patent") and U.S. Patent No. 10,703,809 (the "'809 patent") (collectively, the "2020 Patents").

of any such patent infringement litigation. *Id.* ¶¶ 67–68. Thus, Samsung indicated that it intended to launch its product as early as January 3, 2024. *Id.* ¶ 265.

Consistent with its rights under the BPCIA, Alexion filed a patent infringement suit against Samsung in federal district court in Delaware on January 3, 2024. Am. Compl. ¶ 266; Answer ¶ 266. Alexion alleged that Samsung's biosimilar product would infringe Alexion's 2017 and 2020 Patents. Am. Compl. ¶ 266; Answer ¶ 266; *see also* Compl. ¶ 2, *Alexion Pharms., Inc. v. Samsung Bioepis Co.*, No. 24-cv-00005-GBW (D. Del. Jan. 3, 2024), ECF No. 1. Alexion sought damages for patent infringement, a declaratory judgment of infringement, and an injunction preventing Samsung from launching its biosimilar in the United States. Compl. ¶¶ 42–225, *Samsung Bioepis*, ECF No. 1. Samsung counterclaimed that the 2017 and 2020 Patents were unenforceable due to inequitable conduct. Am. Compl. ¶ 276. The district court did not grant Alexion's request for an injunction. *Id.* ¶ 279. On July 19, 2024, Samsung received FDA approval to market its Soliris biosimilar product, which entitled Samsung to launch its product as of that date. Am. Compl. ¶ 284; Answer ¶ 284.

In August 2024, Samsung and Alexion settled all pending claims involving Soliris, including with respect to the IPRs and the District of Delaware litigation. Am. Compl. ¶ 286; Answer ¶ 286. *See* Confidential Settlement and License Agreement between Alexion and Samsung (the "Settlement"), Ex. 1 at 1.[3] Under the terms of the Settlement, Samsung agreed to refrain from launching its Soliris biosimilar until March 2025. *See id.* § 4(b); Am. Compl. ¶ 289. Alexion and Samsung also agreed to jointly move to dismiss the patent infringement litigation, as well as the IPR proceedings that Samsung initiated challenging Alexion's 2017 and 2020 Patents as unpatentable. Ex. 1 §§ 2(a)–(b); *see also* Am. Compl. ¶ 257; Answer ¶ 257. Samsung launched

[3] "Ex. __" refers to the exhibits attached to the Declaration of Ashley Bass, submitted herewith.

its Soliris biosimilar in April 2025. Am. Compl. ¶ 289; Answer ¶ 289. Thus, although Samsung originally indicated that it planned to launch its biosimilar as early as January 3, 2024 (or at the latest by July 19, 2024, when it received FDA approval), Alexion successfully enforced its patent rights by preventing Samsung from launching its Soliris biosimilar until it launched in April 2025, through the resolution of the patent issues in the IPRs and the District of Delaware litigation.

**B. The Motion to Dismiss Decision**

Emblem filed its Amended Complaint in this action on June 24, 2025, challenging Alexion's patent-related conduct and asserting that biosimilars for Soliris should have been available even earlier. On August 5, 2025, Alexion moved to dismiss the Amended Complaint in its entirety. ECF No. 27. In its opposition, Emblem confirmed that it is not asserting a sham litigation claim as to Amgen, nor is it asserting that the settlements with Amgen or Samsung violated the antitrust laws. ECF No. 36 (Pl.'s Opp'n to Defs.' Mot. to Dismiss) at 14 & n.42. This Court partially granted Alexion's motion, dismissing Plaintiff's federal antitrust and analogous state claims based on a *Walker Process* theory for lack of standing. MTD Op. at 16–18, 24. The Court, however, declined to dismiss the sham litigation theory as to Samsung at the motion to dismiss stage, stating that "the Samsung suit settled on terms favorable to Alexion provides strong evidence that the patent litigation was not objectively baseless" but that "the complete terms of the settlement are not in the record . . . so the Court is skeptical as to whether it can draw any conclusions as to the favorability of the settlement." *Id.* at 21 & n.23. Thus, Emblem's only remaining claim in this case is its sham litigation claim as to Samsung. Alexion answered Emblem's First Amended Complaint on March 27, 2026. ECF No. 66.

The Court also noted that the issue of whether Emblem had standing to pursue a sham litigation claim premised on the same facts as the dismissed *Walker Process* allegations seemed to raise similar standing concerns, but it did not view the issue as being squarely presented in the

briefing. MTD Op. at 23 n.25 ("The Court acknowledges that allowing the sham litigation claim to proceed based on allegations of fraud or inequitable conduct seems to raise similar antitrust standing concerns as with *Walker Process* claims."). The Court's subsequent ruling on Emblem's Motion for Reconsideration made clear that Alexion could raise the question of antitrust standing at a later stage of the litigation. ECF No. 65 ("Nor did the Court hold that Defendants had waived the argument throughout this litigation that end payers lacked antitrust standing to allege a sham litigation exception." (citing MTD Op. at 23 n.25 (noting that "neither party has argued this issue, and thus it is not before the Court"))).

## LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[4] A Rule 12(c) motion is governed by the same legal standard as a motion to dismiss under Rule 12(b)(6) but implicates "the pleadings as a whole rather than just the plaintiff's complaint." *Iron Workers Dist. Council of New Eng. Health & Welfare Fund v. Teva Pharm. Indus. Ltd.*, 757 F. Supp. 3d 91, 95 (D. Mass. 2024) (citing *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54–55 (1st Cir. 2006)). That means courts may consider "facts drawn from documents 'fairly incorporated' in the pleadings." *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018) (citation omitted); *see also Curran v. Cousins*, 509 F.3d 36, 43–44 (1st Cir. 2007) ("The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." (citation omitted)). "The Court may also consider

---

[4] A 12(c) motion is proper at any time "early enough not to delay trial," and may be brought after a 12(b)(6) ruling. Fed. R. Civ. P. 12(c); *see Santander Consumer USA, Inc. v. Walsh*, 762 F. Supp. 2d 217, 233 (D. Mass. 2010); *Quiñones v. Méndez*, No. 10-cv-01378, 2012 WL 1657137, at *3 (D.P.R. May 10, 2012) (granting 12(c) after denying 12(b)(6)).

documents that the parties provide alongside their pleadings if 1) the parties do not dispute their authenticity, 2) they are 'central to the plaintiffs' claim' or 3) they are 'sufficiently referred to in the complaint.'"[5] *Iron Workers*, 757 F. Supp. 3d at 95 (quoting *Curran*, 509 F.3d at 44).

Judgment on the pleadings is appropriate where the pleadings and incorporated documents negate liability as a matter of law. *See, e.g.*, *Aponte-Torres*, 445 F.3d at 54–55. A Rule 12(c) motion requires courts to "separate wheat from chaff"—if the well-pleaded facts do not permit courts to infer more than the mere possibility of misconduct, then the complaint must be dismissed. *Kando*, 880 F.3d at 58 (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Iron Workers*, 757 F. Supp. 3d at 97 (granting judgment on the pleadings where defendants' submitted documents rendered implausible plaintiffs' antitrust theory). Whether a lawsuit is a sham is a question of law that can and should be decided on a Rule 12 motion where the relevant facts are not disputed. *See PRE*, 508 U.S. at 63; *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharm. Corp.* ("*UFCW*"), 902 F.3d 1, 15–16 (1st Cir. 2018) (affirming district court's dismissal of complaint alleging sham litigation); *In re Lantus Direct Purchaser Antitrust Litig.*, No. 16-cv-12652, 2018 WL 6629708, at *10 (D. Mass. Oct. 24, 2018) (dismissing sham litigation claim), *rev'd on other grounds*, 950 F.3d 1 (1st Cir. 2020).

## ARGUMENT

### I. EMBLEM LACKS ANTITRUST STANDING TO PURSUE A SHAM LITIGATION CLAIM PREDICATED ON A FRAUD-ON-THE-PTO THEORY.

For the same reasons addressed in this Court's motion to dismiss opinion, Emblem lacks antitrust standing to pursue sham litigation claims predicated on allegations of fraud on the PTO—the only basis Emblem has pleaded to support its sham litigation claim. Emblem cannot establish

[5] The Samsung agreement is central to Emblem's claims and thus incorporated by reference into the Amended Complaint. *See, e.g.*, Am. Compl. ¶¶ 285–287.

antitrust standing by simply relabeling those exact same allegations of fraud on the PTO as a sham litigation claim.

As this Court previously held, Emblem lacks antitrust standing to pursue a fraud-on-the-PTO theory because Emblem's purported injuries as an indirect purchaser of Soliris are too far removed from the alleged fraud central to its claims. MTD Op. at 16–17. This Court determined that its holding comports with the First Circuit's approach to assessing whether a plaintiff is the proper party to assert antitrust claims, because Emblem's "alleged fraud on the PTO is too far removed from Emblem's injuries, with too many intervening intermediaries." *Id.* at 17.

This Court correctly noted in the MTD Order that "allowing the sham litigation claim to proceed based on allegations of fraud or inequitable conduct seems to raise similar antitrust standing concerns as with *Walker Process* claims." *Id.* at 16–17, 23 n.25. This is because Emblem's sham litigation theory does not rest on an independent theory of objective baselessness. Rather, it is predicated on the exact same fraud-on-the-PTO allegations that Emblem does not have standing to pursue. *See* ECF No. 68 (Pl.'s Mem. of L. in Supp. of Mot. to Certify for Interlocutory Appeal) at 5 n.10 (explaining Emblem's view that the alleged "fraud on the patent office" is "highly relevant to Emblem's remaining claims"). Specifically, Emblem alleges that Alexion engaged in sham litigation by asserting the 2017 and 2020 Patents against Samsung despite knowing those patents were invalid because they had been procured through material misrepresentations and omissions to the PTO. Am. Compl. ¶¶ 291–299; *see also* MTD Op. at 22–23 (summarizing the allegations). But strip away the fraud-on-the-PTO allegations, and Emblem has no remaining basis to allege that Alexion's patent enforcement was objectively baseless. The "sham" claim thus is

entirely coextensive with the same alleged fraud theory that this Court already held Emblem lacks standing to pursue.[6]

The coextensive nature of Emblem's *Walker Process* and sham litigation theories is dispositive. Emblem cannot establish antitrust standing by simply relabeling its dismissed *Walker Process* allegations as a sham litigation theory, and it has failed to plead an independent sham litigation theory not predicated on alleged fraud before the PTO that could provide a separate basis for antitrust standing. *See Vázquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 293 (1st Cir. 2022) (explaining that a plaintiff must satisfy the threshold requirements of the antitrust standing doctrine to bring an antitrust claim). Emblem has effectively conceded this point. When it sought reconsideration of this Court's ruling on the *Walker Process* standing issue, Emblem acknowledged that the Court's holding also forecloses Emblem's standing on its sham litigation claim: "any arguments related to a standing requirement to raise the sham exception to *Noerr-Pennington*, would fail for the same reasons as the *Walker Process* exception." ECF No. 58 (Pl.'s Mem. of L. in Supp. of Mot. for Partial Recons. & Clarification) at 19–20 (collecting cases showing that the Federal Circuit "treats 'sham' and '*Walker Process*' exceptions identically").[7]

---

[6] In cases where sham litigation claims have been allowed to proceed, plaintiffs invariably assert a basis distinct from fraud on the PTO to support the sham litigation claim—for example that the patent holder did not have an objectively reasonable basis to assert infringement in the case. *See, e.g.*, *La. Health Serv. & Indem. Co. v. Celgene Corp.*, No. 23-cv-07871, 2025 WL 1056668, at *26–27 (S.D.N.Y. Apr. 8, 2025) (addressing sham litigation theories beyond purported *Walker Process* fraud). Here, Emblem has no sham litigation theory beyond its fraud-on-the-PTO theory.

[7] Although Emblem has focused exclusively on Alexion's assertion of the 2017 and 2020 patents to date, to be clear, if Emblem has no standing to challenge Alexion's assertion of those patents, Emblem cannot assert antitrust injury or standing based solely on Alexion's assertion of U.S. Patent No. 9,447,176 (the "'176 patent") on the aHUS indication. This is because Emblem has not alleged any harm or delay that flowed from assertion of that patent separate and apart from the 2017 and 2020 patents. In other words, Emblem has not alleged any antitrust injury specific to Alexion's assertion of the '176 patent in the litigation. Nor does Emblem's assertion that the '176 patent was obvious or anticipated rise to the level of a sham. *See UFCW*, 902 F.3d at 15 ("[T]he plaintiffs have not identified a single precedent that permitted an antitrust 'sham' litigation claim (continued…)

Moreover, Emblem's effort to revive the same fraud-on-the-PTO theory through its sham litigation claim does not alter the governing antitrust standing inquiry applicable under any theory: standing does not exist where the alleged injury is speculative or too attenuated from the challenged conduct. MTD Op. at 17 (citing *SAS of P.R., Inc. v. P.R. Tel. Co.*, 48 F.3d 39, 45 (1st Cir. 1995)). Emblem pays for Soliris only after Alexion sells it to authorized specialty distributors, who sell to specialty pharmacies, hospitals, health care providers, and infusion therapy providers, who then provide Soliris to patients. Am. Compl. ¶ 9. Then it is patients who typically pay for Soliris via third-party payers like Emblem. *Id.* As an indirect purchaser, Emblem thus is the last link in the pharmaceutical distribution chain, making its alleged injuries too far removed from the alleged PTO fraud to establish antitrust standing under any theory. *See* MTD Op. at 17.

As a result, the rationale for not extending *Walker Process* standing to indirect purchasers applies equally here. Emblem's theory depends on multiple intervening intermediaries, and permitting an indirect purchaser to pursue these allegations would exacerbate the very manageability, causation, and duplicative recovery concerns that the antitrust standing doctrine is designed to avoid. *Id.* at 16–18; *see also, e.g., In re K-Dur Antitrust Litig.*, No. 01-cv-01652, 2007 WL 5297755, at *18 (D.N.J. Mar. 1, 2007) (reasoning that antitrust policy does not contemplate allowing "parties only tangentially affected by a patent holder's suit" to relitigate settled patent disputes "regardless of whether the patent was fraudulently procured," as "[s]uch a result [would] likely discourage settlement and inject a significant level of uncertainty into the process of adjudicating patent disputes"). To do otherwise would run afoul of settled antitrust principles and

to go forward based on an allegation that the infringement litigation was objectively baseless because the underlying patent was alleged to be invalid due to anticipation or obviousness.").

policy—particularly here, where those best positioned to challenge that conduct (*i.e.*, competitors like Samsung), have already litigated and resolved claims arising from the same alleged conduct.

## II. ALEXION'S SETTLEMENT OF THE SAMSUNG CASE DEMONSTRATES THE CASE WAS SUCCESSFUL AS A MATTER OF LAW.

Even if Emblem had antitrust standing, its sham litigation claim regarding the Samsung patent litigation fails because Emblem cannot show that Alexion's lawsuit was objectively baseless. The Supreme Court's seminal decision in *PRE* is clear that a successful lawsuit cannot be a sham. 508 U.S. at 60 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."). Alexion's settlement with Samsung achieved Alexion's objective of enforcing its patent rights because Samsung agreed to respect Alexion's patents for a period of time before the patents expired. *See* Ex. 1 §§ 4(a)–(b). Alexion thus succeeded in this litigation because the objective of the litigation was enforcing its patent rights. This precludes Emblem's claim of "sham" litigation based on the Samsung litigation, as a matter of law.

The First Circuit has recognized that *Noerr-Pennington* "provides a party immunity from antitrust liability for petitioning the government for redress, in light of the First Amendment right to petition the government." *UFCW*, 902 F.3d at 4. It is well settled that the filing of patent litigation is a form of government petitioning because the patent holder is seeking government "redress" for infringement of its patent rights. *See id.* at 4–5. Such conduct is protected by the First Amendment and is thus generally immune from antitrust liability under the *Noerr-Pennington* doctrine. *PRE*, 508 U.S. at 56.

An antitrust plaintiff can strip a patent holder of its *Noerr-Pennington* immunity for its litigation activity only by demonstrating that the lawsuit was a "sham." In *PRE*, the Supreme Court established a two-part definition of "sham" litigation. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."

*Id.* at 60. Second, the lawsuit must be brought subjectively in bad faith, "through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'" *Id.* at 60–61 (quoting *Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991)). The bringing of patent litigation is thus immune from the antitrust laws under the *Noerr-Pennington* doctrine if the litigation had an objective basis, which "requires no more than a 'reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication.'" *PRE*, 508 U.S. at 62–63 (citation omitted). "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized . . . and an antitrust claim premised on the sham exception must fail." *Id.* at 60.

Under *PRE*, "petitioning activity that actually produces a favorable outcome is axiomatic of the type of petitioning activity that is designed to elicit a favorable outcome and, thus, susceptible to *Noerr-Pennington* immunity." *In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 337 (S.D.N.Y. 2019). In other words, a successful litigation, by definition, cannot be a sham. *PRE*, 508 U.S. at 58; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502 (1988) (a successful "effort to influence governmental action . . . certainly cannot be characterized as a sham"). The Supreme Court "crafted the *Noerr-Pennington* doctrine—and carved out only a narrow exception for 'sham' litigation—to avoid chilling the exercise of the First Amendment right to petition the government for redress of grievances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (citing *PRE*, 508 U.S. at 56); *see also In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 147 (3d Cir. 2017) ("A plaintiff claiming that a lawsuit is, by its very existence, anticompetitive and unlawful faces an uphill battle.").

Where litigation is resolved via a settlement that achieves some or all of the relief sought in the complaint, the petitioning activity has produced a favorable outcome. *See, e.g.*, *Elysium*, 354 F. Supp. 3d at 337–38 (finding that a Citizen Petition filed with the FDA was not a sham where the Petition resulted in the competitor taking action that the Petition requested); *P.R. Tel. Co. v. San Juan Cable Co.*, 196 F. Supp. 3d 248, 326 (D.P.R. 2016) (finding lawsuit was not a sham where plaintiff achieved the relief it was seeking in the lawsuit), *aff'd*, 874 F.3d 767 (1st Cir. 2017); *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1357–58 & n.13 (S.D. Fla. 2004) (dismissing sham litigation claim against party that obtained certain relief by filing patent enforcement lawsuits even though the cases were not litigated to verdict: "a plaintiff who has filed suit and receives . . . a change in conduct" has made "reasonable efforts at petitioning for redress."). For these reasons, "courts have invariably held that lawsuits terminating in a favorable settlement are also objectively reasonable and are not shams." *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14-cv-00206, 2017 WL 1178224, at *4 (N.D. Ill. Mar. 30, 2017) (citation omitted). This is because the "settlement of a purportedly objectively baseless lawsuit" is a "favorable outcome" that "insulates the activity from application of the sham exception." *Elysium*, 354 F. Supp. 3d at 338 (collecting cases).

*Lantus* is instructive. 2018 WL 6629708, at *11. There, the plaintiffs alleged that the defendant had engaged in sham litigation with respect to an underlying patent case that had resolved through settlement. *Id.* As the court observed, the settlement involved a negotiated resolution between the parties whereby the alleged infringer agreed to launch its generic product at a date in the future, but prior to the expiration of the patent. *Id.* The court dismissed the claim, concluding that "the existence of such a settlement supports the conclusion that [the patentee's] underlying infringement claim was at least colorable." *Id.*; *see also Mass. Laborers' Health &*

*Welfare Fund v. Boehringer Ingelheim Pharms., Inc.*, 783 F. Supp. 3d 417, 441–42 (D. Mass. 2025) (a patent litigation settlement reflects that the infringement suits were not objectively baseless); *La. Health*, 2025 WL 1056668, at *25 (settlement reflected that the lawsuits "were 'a reasonable effort at petitioning for redress and therefore not a sham'").

Here, although Samsung originally indicated that it planned to launch its Soliris biosimilar as early as January 3, 2024, Alexion successfully enforced its patent rights because Samsung did not launch its Soliris biosimilar until April 2025 pursuant to the resolution of the patent issues in the IPRs and the District of Delaware litigation. Alexion thus achieved the objectives of the litigation by enforcing its patent rights to prevent Samsung's immediate launch of its Soliris biosimilar. Alexion was also successful because Samsung agreed to dismiss its challenge to the validity of Alexion's 2017 and 2020 Patents before the PTAB, and Samsung agreed to dismiss its inequitable conduct counterclaim against Alexion as to those same patents. Thus, the fact that Alexion succeeded in enforcing its patent rights against Samsung—as the Complaint specifically alleges and the Settlement unambiguously shows—means that Alexion's assertion of its patents was not a sham as a matter of law. *See Elysium*, 354 F. Supp. 3d at 338. Because the lawsuit was successful, and therefore objectively reasonable, that ends the inquiry.

This is especially the case because Emblem does not allege that Alexion's settlement with Samsung was itself unlawful. *See Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 992 (N.D. Ill. 2003) ("If . . . there is nothing suspicious about the circumstances of a patent settlement, then to prevent a cloud from being cast over the settlement process a third party should not be permitted to haul the parties to the settlement over the hot coals of antitrust litigation."). Indeed, Emblem has admitted that it is not asserting that the Settlement is an independent violation of the antitrust laws. MTD Op. at 12 n.10 (citing ECF No. 36 at 14 n.42). Nor could it. Under

the Supreme Court's decision in *Actavis*, the settlement of patent infringement litigation may be subject to antitrust scrutiny only if the settlement contains a "large and unjustified" payment to the alleged infringer. *FTC v. Actavis*, 570 U.S. 136, 158 (2013); *see also In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 552 (1st Cir. 2016) ("[T]he plaintiffs must allege facts sufficient to support the legal conclusion that the settlement at issue involves a large and unjustified reverse payment under *Actavis*."). The Sherman Act does not reach settlements like this one, where the parties agreed to an early entry patent license without any terms that could be considered a "reverse payment." In fact, the Settlement is exactly the kind of resolution that *Actavis* blessed. *See Actavis*, 570 U.S. at 158 (settlements merely "allowing the generic manufacturer to enter the patentee's market prior to the patent's expiration, without the patentee paying the challenger to stay out prior to that point," are not subject to antitrust scrutiny).[8]

* * *

Emblem's remaining claim in this case is very narrow—whether the litigation with Samsung was a sham. Emblem lacks antitrust standing to pursue a sham litigation theory based on allegations the Court has already held Emblem lacks standing to pursue. And, the Settlement with Samsung, by which Alexion successfully enforced its patent rights to preclude a threatened early launch by Samsung, establishes as a matter of law that the patent litigation was not a sham. Therefore, judgment on the pleadings under Rule 12(c) to Alexion is warranted.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Emblem's remaining claims with prejudice.

[8] Emblem has no remaining claims as to Amgen. But in an abundance of caution, Alexion also provides herein the settlement with Amgen (Ex. 2), which also demonstrates that the settlement is nothing more than an early entry license settlement. Thus, all the arguments herein as to the Samsung settlement apply equally to the Amgen settlement.

Dated: August 28, 2026

Respectfully submitted,

*<u>/s/ Ashley Bass</u>*
Timothy C. Hester (*pro hac vice*)
Ashley Bass (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
T: (202) 662-6000
thester@cov.com
abass@cov.com

*<u>/s/ Kenneth S. Leonetti</u>*
Kenneth S. Leonetti (BBO #629515)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
Fax: (617) 832-7000
kleonetti@foleyhoag.com

*Counsel for Defendants Alexion Pharmaceuticals, Inc. and Alexion Pharma International Operations Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document has been electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated: August 28, 2026 *<u>/s/ Kenneth S. Leonetti</u>*